IRVING, J.,
for the Court:
¶ 1. This appeal arises out of Benjamin Roberson’s conviction, by a jury in the Washington County Circuit Court, of sexual battery of a child by a person in a position of trust or authority over the child. The circuit court sentenced Roberson to twenty-five years in the custody of the Mississippi Department of Corrections, with twenty years to serve and five years of post-release supervision. Feeling aggrieved, Roberson appeals and asserts that: (1) his confession should have been suppressed by the circuit court; (2) Rule 412 of the Mississippi Rules of Evidence was improperly applied by the circuit court; (3) the circuit court erred in its ruling regarding the Washington County Youth Court’s records; (4) his trial counsel was ineffective; and (5) the overwhelming weight of the evidence does not support his conviction.
¶ 2. Finding no reversible error, we affirm the judgment of the circuit court.
FACTS
¶ 3. Jane Smith[1] ran away from home on June 19, 2007. Jane was fourteen years old at the time. Tara Smith, Jane’s mother, discovered that Jane was missing around 4:00 a.m. and called the Greenville Police Department (GPD) to report Jane’s disappearance.
¶ 4. Roberson, then a patrol officer with the GPD, responded to Tara’s call. Roberson went to the Smiths’ house, then left in his patrol car with Tara following in a vehicle. It was raining steadily when Tara and Roberson located Jane riding her bike on the side of the road. Both Tara and Roberson questioned Jane as to where she had been and why she had left home. *207 Tara requested that Jane be arrested, and Roberson handcuffed Jane and placed her in his patrol vehicle. Roberson transported Jane to jail, where a youth court judge was contacted. The judge indicated to Roberson that he should release Jane back to her mother. Roberson returned Jane to Tara; however, as Tara and Roberson spoke at the front of the house, Jane fled from the back of the house. When Tara realized that Jane had run away again, she contacted the police. Roberson and two other officers returned to the house and searched for Jane, but were unable to find her.
¶ 5. Tara believed that Jane would not return home if Tara was still there, so Tara went to a friend’s house, where she left her vehicle. She then returned home and waited for Jane. Jane, apparently believing that her mother had gone to work, entered the house. Tara then disciplined Jane before taking her to the police, where Jane was taken into custody. Jane spent approximately two weeks in juvenile detention and was then taken to Brentwood Behavioral Healthcare of Mississippi in Flowood, Mississippi, for treatment of her mental and emotional problems. As part of routine procedures at Brentwood, Jane was administered a pregnancy test, which showed that she was pregnant. When questioned as to how she had become pregnant, Jane told the Brentwood staff that she had been raped by the police officer who took her into custody in June. Jane’s status was also disclosed to her mother, who was upset at the news. A second pregnancy test, which was administered some time after the first test, revealed that Jane was not actually pregnant.
¶ 6. Roberson testified that he contacted Lieutenant Dondi Gibbs of the GPD[2] after hearing rumors of Jane’s allegations. Roberson was eventually asked to come and speak with the police about Jane’s accusations. Roberson voluntarily went to the police station and spent approximately two hours speaking with Lieutenant Gibbs and Sergeant Michael Merchant, the investigator in charge of Roberson’s case. It is undisputed that Roberson was informed of his rights by means of Miranda warnings.[3] Lieutenant Gibbs and Sergeant Merchant testified that Roberson was initially unwilling to give a statement, but that he eventually admitted that he had had sex with Jane. Once it became clear that Roberson was going to confess to the assault, the officers began taping the interview. Thus, there are only about twenty recorded minutes out of the nearly two hours that Roberson spent at the police station. The officers testified that they spent the first hour and a half or so of the interview speaking with Roberson about how much time he might get if he had had sex with Jane, where he might be housed if he was taken into custody, and whether he could get probation if he was convicted. At one point, Roberson indicated that he thought that maybe he should get an attorney due to the severity of the allegations; however, the interview proceeded without counsel for Roberson. After admitting to having had sexual relations with Jane, Roberson was allowed to leave the police station. Sergeant Merchant testified that he allowed Roberson to leave because the investigation into the alleged assault was still ongoing. Roberson was eventually arrested later in July 2007.
*208 ¶ 7. Prior to trial, Roberson sought to have his statements to the police suppressed on the grounds that he was denied his right to an attorney and that the statement was the result of police coercion or promises. The circuit court denied Roberson’s motion. Also prior to trial, Roberson filed a motion in youth court, seeking to obtain a copy of Jane’s youth court records for an in camera review by the circuit court. The record does not inform us as to whether the youth court ever ruled on Roberson’s motion, but it is clear that Roberson did not get the records from the youth court. Roberson further sought permission, under Rule 412 of the Mississippi Rules of Evidence, to inquire into prior sexual accusations that had been made by Jane. The circuit court denied Roberson’s Rule 412 motion and also declined to order the youth court to release its records.
¶ 8. At trial, Roberson testified in his own defense. He claimed that his prior admissions to the police were the result of coercion and fear. Roberson denied that he had had sexual relations with Jane. By contrast, Jane testified that Roberson drove to a levee in Washington County, where he ordered her to pull down her pants and then raped her on the hood of his patrol car. Jane testified that she remained handcuffed throughout the assault and that Roberson ordered her to use rainwater to wash herself afterward. Jane admitted that her trial testimony differed from the account that she initially gave at Brentwood, wherein she stated that Roberson assaulted her while she lay on the ground. Jane remained adamant, however, that Roberson had sexually assaulted her.
¶ 9. After hearing all the evidence, including testimony from Jane, Roberson, Tara, Lieutenant Gibbs, and Sergeant Merchant, the jury found Roberson guilty of sexual battery.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Suppression of Statement

¶ 11. In his first contention of error, Roberson claims that the circuit court erred when it refused to suppress the in-culpatory statement that Roberson gave to Lieutenant Gibbs and Sergeant Merchant. We note at the outset that “[fjindings by a trial judge that a defendant confessed voluntarily, and that such confession is admissible!,] are findings of fact.” Chamberlin v. State, 989 So.2d 320, 331 (¶34) (Miss.2008) (citing Davis v. State, 551 So.2d 165, 169 (Miss.1989)). Consequently, “[a]s long as the trial judge applie[d] the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence.” Id. (citing Davis, 551 So.2d at 169).
¶ 12. Roberson’s argument fails for several reasons. First, as the circuit court found, Roberson was not “in custody” when he gave his statement to police. In Mississippi, the right to counsel attaches only once an individual is “in custody.” See Culp v. State, 933 So.2d 264, 273 (¶ 18) (Miss.2005); Hunt v. State, 687 So.2d 1154, 1159 (Miss.1996); Balfour v. State, 598 So.2d 731, 743 (Miss.1992); Coleman v. State, 592 So.2d 517, 520 (Miss.1991); Corley v. State, 536 So.2d 1314, 1317 (Miss.1988). An individual is in custody “if a reasonable person would find [his] ability to freely leave restricted.” Culp, 933 So.2d at 273 (¶ 19) (citing Miranda, 384 U.S. at 444, 86 S.Ct. 1602). In determining whether an individual is in *209 custody, “[t]he officer’s subjective intent is irrelevant.” Godbold v. State, 731 So.2d 1184, 1188 (¶ 11) (Miss.1999) (quoting Hunt, 687 So.2d at 1160). In Hunt, the Mississippi Supreme Court stated that:
Whether a reasonable person would feel that she was “in custody” depends on the totality of the circumstances. Factors to consider include: (a) the place of interrogation; (b) the time of interrogation; (c) the people present; (d) the amount of force or physical restraint used by the officers; (e) the length and form of the questions; (f) whether the defendant comes to the authorities voluntarily; and (g) what the defendant is told about the situation.
Hunt, 687 So.2d at 1160.
¶ 13. In Hunt, the defendant “voluntarily went to the sheriffs offiee[,]” “was questioned during the late afternoon for a relatively short period of time[,]” and “was not physically restrained....” Id. However, the defendant “was told [that] she could not leave until she gave a statement....” Id. Regardless, the Hunt court found that “the trial judge did not commit manifest error by admitting her self-incriminating statement.” Id. Similarly, in Godbold, the supreme court found that: “[t]he first contact between the parties was made by” the defendant, the defendant “was questioned ... in [an] office, not in an interrogation room[,]” the questioning was conducted “during regular office hours[,]” and “[n]o force or physical restraint was used to get [the defendant] to the meeting....” Godbold, 731 So.2d at 1188 (¶13). The supreme court concluded that the defendant had “not undergone] custodial interrogation.” Id.
¶ 14. In the present case, Roberson voluntarily came to the police station; in fact, Roberson made the initial contact with the GPD when he called Lieutenant Gibbs to inquire about Jane’s accusation. Roberson was accompanied to the police station by his girlfriend and her son. He was questioned in Lieutenant Gibbs’s office, not in an interrogation room. The interview was conducted in the afternoon, and only Roberson, Lieutenant Gibbs, and Sergeant Merchant were present. The questioning lasted for approximately two hours, during which time Roberson was not physically restrained or prevented from leaving in any way. Roberson was informed that Jane had given a statement alleging that Roberson had sexually assaulted her. Roberson was not searched prior to the interview, and he, in fact, retained possession of a cellular telephone that he used to send text messages during the meeting. Roberson testified that the text messages concerned going out to eat with his girlfriend and her son after the interview. It is clear that Roberson was making plans for the immediate future that did not include being arrested. Sergeant Merchant testified that Roberson was free to leave at any time and that Roberson was never told that he could not leave. Under these circumstances, we cannot find error with the circuit court’s finding that Roberson was not “in custody.” Roberson has failed to show that the circuit court was manifestly in error in denying Roberson’s motion to suppress his statement on the ground of Roberson’s alleged request for counsel, as Roberson had no right to counsel because he was not in custody at the time of the interview.
¶ 15. Furthermore, even if Roberson had been in custody, we would still affirm the judgment of the circuit court. Although Roberson made some statement regarding an attorney, there was a dispute as to what he said. Sergeant Merchant and Lieutenant Gibbs testified at the suppression hearing that Roberson simply asked whether they thought he needed an attorney. Roberson, by contrast, indicated *210 that he stated that he thought that he needed an attorney due to the severity of the allegations against him.[4]
¶ 16. In Chamberlin, Lisa Jo Chamberlin’s interrogation continued after she asked the officer conducting the interview whether he thought she needed an attorney. Chamberlin, 989 So.2d at 330 (¶ 25). The officer proceeded with the interview after Chamberlin indicated that she wanted to continue talking rather than invoke her right to counsel. Id. According to Sergeant Merchant and Lieutenant Gibbs, the situation here is analogous. Although Roberson questioned whether he needed an attorney, the officers told him that he would have to make that decision, and Roberson then continued to talk to the officers. Even had Roberson been in custody, the circuit court would not have been in error for finding his statement admissible under these circumstances.
¶ 17. Finally, Roberson contends that the officers made promises and coerced him into confessing to the assault. “For a confession to be admissible, it must have been given voluntarily and not given as a result of promises, threats, or inducements.” Nelson v. State, 10 So.3d 898, 910 (¶ 52) (Miss.2009) (quoting Martin v. State, 871 So.2d 693, 701 (¶ 29) (Miss.2004)). The officers testified quite differently from Roberson. Sergeant Merchant specifically testified that neither he nor Lieutenant Gibbs promised Roberson anything in return for his confession. Lieutenant Gibbs testified that:
I specifically indicated to him that I would do everything in my power as a supervisor to help him, but I made sure he understood that that final decision was not going to be made at that time.
[[Image here]]
Well, one of his concerns was was he going to be housed in the Greenville Police Department in the event he was arrested. I explained to him that I would do everything in my power to insure his safety to get outside the police department. I also expressed to [sic] another one of his concerns was when he would be arrested, if he was arrested, and I explained to him that answer would not be mine to make.
Although the officers indicated that they discussed procedural issues with Roberson, such as where he might be housed and when he might be arrested, both officers were adamant that they never promised Roberson anything in return for his confession. Lieutenant Gibbs indicated that he explained to Roberson that all final decisions would be made by someone else. The circuit court was entitled to find the officers more credible than Roberson. Therefore, even if Roberson had been in custody at the time of the questioning, we would find no error on this basis.
¶ 18. This contention of error is without merit.

2. Rule Jpl2

¶ 19. Rule 412 was addressed twice prior to Roberson’s trial. On March 6, 2009, the State filed a motion in limine to exclude any mention of Jane’s past sexual conduct; a hearing on the motion was held the same day. The circuit court granted the motion by means of a March *211 26, 2009, order. Then, one day prior to the day when Roberson’s trial was supposed to begin, the defense filed a motion under Rule 412, seeking to introduce evidence that Jane had made prior false accusations of sexual misconduct. The circuit court denied the motion at a hearing on May 4, 2009.[5] The circuit court ultimately found that the motion was not timely filed, that Jane had not been served with notice as required by Rule 412, and that there was no accompanying offer of proof as required by the rule. The circuit court noted that the defense would be able to question Jane about whether she lied, but that she could not be questioned as to an alleged prior pregnancy and any alleged prior sexual encounters.
¶ 20. Rule 412 states in pertinent part:
(a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense against another person, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual offense is not admissible.
(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense against another person, evidence of a victim’s past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:
(1) Admitted in accordance with subdivisions (c)(1) and (c)(2) hereof and is constitutionally required to be admitted; or
(2) Admitted in accordance with subdivision (c) hereof and is evidence of
(A) Past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen, pregnancy, disease, or injury; or
(B) Past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which a sexual offense is alleged; or
(C) False allegations of past sexual offenses made by the alleged victim at any time prior to the trial
(c)(1) If the person accused of committing a sexual offense intends to offer under subdivision (b) evidence of specific instances of the alleged victim’s past sexual behavior or evidence of past false allegations made by the alleged victim, the accused shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.
(2) The motion described in paragraph (1) shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subdivision *212 (b), the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing!,] the parties may call witnesses including the alleged victim, and offer relevant evidence.
[[Image here]]
(3) If the court determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.
(d) For purposes of this rule, the term “past sexual behavior” means sexual behavior other than the sexual behavior with respect to which the sexual offense is alleged.
(Emphasis added).
¶ 21. Because Roberson failed to file an offer of proof, the circuit court had difficulty drawing a conclusion as to exactly what information Roberson was alleging that he was entitled to question Jane about. Roberson’s Rule 412 motion reads, in its entirety:
Comes now the defendant, by and through his attorney, and hereby gives notice to the State of MS pursuant to [R]ule 412 of the Mississippi Rules of Evidence that it intends to introduce or cross[-]examine the alleged victim in this case regarding prior sexual conduct involving [John Lee].[6] The defendant also intends to question the alleged victim regarding her whereabouts on[ ] June 19, 2006, the night of this alleged incident. In support thereof, defendant would state the following:
1. It has recently been discovered by the defense that on July 6, 2006, when questioned about the source of a perceived pregnancy, the alleged victim admitted to her mother that she had engaged in sexual intercourse with [John Lee].
2. The defendant’s [sic] whereabouts on the night in question is relevant in developing the defendant’s theory of defense and is important in telling a complete story to the jury of the night in question.
Failure to allow the defendant to question the alleged victim regarding this information would deprive the defendant of his right to put on a defense and would violate the defendant’s Constitutional Sixth [A]mendment right to confrontation.
There was also a May 4 hearing on the motion. We quote at length from the transcript of the hearing to clarify this issue:
[ROBERSON’S ATTORNEY]: We have a notice of intent to use prior sexual history of the victim under [Rule] 412.
[COURT]: On Roberson?
[ROBERSON’S ATTORNEY]: Yes.
[COURT]: All right, /all got that?
[PROSECUTOR]: We just received a copy of it this morning, Your Honor.
[COURT]: This morning?
[PROSECUTOR]: Yes, Your Honor.
[ROBERSON’S ATTORNEY]: I just filed it this morning.
[COURT]: Isn’t it 15 days?
[PROSECUTOR]: Yes, sir.
[ROBERSON’S ATTORNEY]: Or in the discretion of the Court.
*213 [COURT]: Beg your pardon?
[SECOND PROSECUTOR]: We are going to object to the notice. It is not timely filed.
[[Image here]]
[ROBERSON’S ATTORNEY]: It was recently discovered by the defense that on July 6, 2006, as the alleged victim was being questioned about this incident or whatever regarding a pregnancy, she admitted she had engaged in sexual intercourse with a [John Lee]. The defense would like to be able to cross[-]examine the victim on that, not per se about the sexual conduct but about the lying, I guess, because it goes to her character and her credibility. So it’s really not necessarily a sexual issue, but I felt we should put it before the Court because it did involve sex.
The second thing is regarding a night of June 19, 2006. I don’t know that this is even an issue, but I want to put it before the Court that on that night the little girl allegedly had run away from home and had run to this little boy’s house, [Sammy Parker].[7] And we do intend to cross[-]examine her about that and also about involving [sic] lies that she told regarding that incident as far as credibility is concerned.
[COURT]: All right. Anything from the State?
[PROSECUTOR]: Your Honor, also [Roberson’s attorney] made the statement that with regard to false allegations that the information was recently received and as a matter of fact, at the first [o]mnibus hearing we had in March when [Roberson’s attorney] objected to our motion in limine, [that] would have been a [Rule] 412 motion. At that time, she indicated that she would like to reserve the right to use false allegations and the name [John Lee] was actually given to the State by [Roberson’s attorney].
A review of the record indicated that Mr. [Lee] had, in fact, indicated that he had had sexual intercourse with the victim and so therefore, it was not a false accusation and that was the information communicated to [Roberson’s attorney].
As far as a prior pregnancy in 2006, the State would once again argue that this is not relevant to the events that occurred in 2007. Pregnancy is not an issue in this case, [it] does not fall under one of the exceptions under Rule 412. The State would object to the victim being cross-examined about any prior statements of pregnancy or non-pregnancy. We know for a fact that the victim does not have any children.
Mr. [Lee] was not alleged to have had any contact with the victim on the night that Benjamin Roberson had sexual intercourse with her in June of 2007, and so the State would object to this whole situation with [Lee] being brought in. It’s only going to confuse the jury since it happened a year prior to when these allegations came forth involving Benjamin Roberson.
As far as where the victim was on the night of the incident, ... her statements were provided in discovery, she explained where she was, where she was coming back from. Of course, she would be subject to cross-examination based upon the statements that she made. So I am not sure why that *214 would be an issue since we provided that information in discovery.
[ROBERSON’S ATTORNEY]: I didn’t know it was an issue. The second part is a moot issue. They have no problems with us questioning her on her whereabouts and anything that she lied about during that time.
[PROSECUTOR]: So long as it doesn’t get into a [Rule] 412 situation where they’re trying to get into an exception to [Rule] 412, which she doesn’t qualify for.
[ROBERSON’S ATTORNEY]: I will leave that. As far as No. 1 is concerned, we are not saying that [Lee] is the source of the pregnancy. I don’t even know if I filed this actually. I just filed out of abundance of caution because I am not questioning her about her sexual relationship with [Lee] as far as the source of any pregnancy. I am questioning her as far as credibility. Because what happened was, and according to [the prosecutor], she said this incident happened a year before. I believe that is incorrect.
In February of 2006 when this little girl, [Jane], was 13 years old, she alleged that she had sex with [Lee]. They filed charges against him. Well, her mother questioned her about having sex with him. She denied it. She denied, she completely denied it.
On July 6, once all this came out about her being pregnant, she admitted to her mother that she had sex with [Lee], This is the same year from February to July. They then went and had [Lee] arrested in August or so of this year — of 2006, same time he was arrested for statutory rape. And I believe at that time, you know, [he] gave a statement to the effect that he had had sex with this girl but later said that he hadn’t had sex but [had] said that because he was scared.
The case, according to [the prosecutor], was presented to a[g]rand [j]ury and was no billed, which I don’t know exactly how that happened. She was 13. He was 18 or 19, which would fall squarely under statutory rape. But in any case, according to her, that is what happened.
So we are not questioning her as far as whether or not she actually had sex with him. We are simply questioning her about the lie, the credibility, the issue that she initially was saying no, no, no, no, no. I mean, she’s a known liar, and we intend to use that as an example of it. So maybe it doesn’t fall under [Rule] 412 and maybe we didn’t have to give notice.
[COURT]: When did the defense discover another warrant?
[ROBERSON’S ATTORNEY]: That [Lee] was a person that she had filed a charge against previously?
[COURT]: No. 1 says, “It’s been recently been [sic] discovered by defense that on July 6, 2006, when questioned about the source of the perceived pregnancy, the alleged victim admitted” — No. 1, when did you find out about that?
[ROBERSON’S ATTORNEY]: I found out on Friday.
[PROSECUTOR]: Your Honor, may I speak just briefly? Just to clarify once again for the record, at the March omnibus hearing when [Roberson’s attorney] first said the words “false allegations,” I said, “I have no knowledge of false allegations. What are you referring to?”
*215 She said there was a[Lee] case. I went back and looked at the [Lee] case. [Roberson’s attorney] had knowledge of Mr. [Lee] because she is the one that gave the name to me.
[COURT]: I think what No. 1 is, not necessarily the [sic][Lee] but that—
[ROBERSON’S ATTORNEY]: That she named him on July 6, 2006, because that was the first time she had told her mother that she had, in fact, had sex with him.
[COURT]: No. My understanding was that you said you wanted to question the mother or the victim about denying that — the lying part so really [sic] doesn’t make any difference who it is.
[ROBERSON’S ATTORNEY]: Right.
[COURT]: You are saying that there was an allegation. She denied it, and then she later admitted it.
[ROBERSON’S ATTORNEY]: Correct.
[[Image here]]
[COURT]: The other issue that we had was any case law on ... whether or not the alleged victim admitted to a mother about intercourse with Mr. [Lee]? Anybody find anything on that?
[ROBERSON’S ATTORNEY]: Not specifically that issue. I did find on bias or impeachment, credibility to bias, that whole issue was not specifically about a sex victim, impeaching a sex victim about a lie that involved sex.
[COURT]: Anything from the State?
[PROSECUTOR]: All of the research the State did, Your Honor, yielded that [Rule] 412 is the measure through which the impeachment evidence has to come through, and that it has to meet one of those exceptions in [Rule] 412. And the State is not saying that all — if they want to impeach her truthfulness and they want to ask about lies about sexual acts, [Rule] 412 is the relevant statute and it blocks unless they have one of the exceptions, semen, pregnancy, disease, injury.
[COURT]: Or false allegations.
[PROSECUTOR]: Or prior false allegation[s],
[ROBERSON’S ATTORNEY]: What does notwithstanding mean? Does that mean unless?
[COURT]: Where are you?
[ROBERSON’S ATTORNEY]: I am looking at the rules, Rule 412. It says, “notwithstanding any other provision of law.” What does “notwithstanding any other provision of law”—
[COURT]: I think what they are talking about is [Rules] 401, 403, 608.
[ROBERSON’S ATTORNEY]: What about [Rule] 616?[8] Unless I am interpreting this wrong, and I may be because I don’t know if notwithstanding any other provision of law [sic]. What I take that to mean is if there is another law, then this would trump this rule. And so case law says that bias is never a collateral matter. It goes to the heart of cross[-]examination, goes to the heart of the right of a defendant on cross[-]examination giving him the right to confront, especially if it relates to bias, credibility, impeachment purposes.
So I feel that Rule 412 is trumped by Rule 616, as well as the case law that says bias is never classified as a collateral matter beyond corporate [sic] entry over matters in which an examiner is required to—
[THIRD PROSECUTOR]: I don’t understand how the statement she made to her mother goes to her bias.
*216 [ROBERSON’S ATTORNEY]: It’s the defense’s position that she has a history of lying when it comes to sex[,] basically to protect herself. In January and February, her mother asked her whether or not she had sex with this guy or whatever. She said no, I didn’t, really to protect herself from her mother’s wrath when, in fact, she had.
Same thing as ... in June. It’s our position [that] in July, she finally discloses that she said that she had sex with a police officer basically to continue that same trend of protecting herself by lying when the question comes up about her having sex with other people.
[THIRD PROSECUTOR]: I still don’t understand bias.
[ROBERSON’S ATTORNEY]: Bias is a protection of yourself.
[THIRD PROSECUTOR]: Bias toward herself.
[ROBERSON’S ATTORNEY]: No, she’s lying to protect herself.
[PROSECUTOR]: She did not lie about whether or not she had sex with a police officer.
[ROBERSON’S ATTORNEY]: That’s your position, but that’s for the jury to decide.
[PROSECUTOR]: But you are saying she lied previously to protect herself, and I’m saying there is nothing in the record that shows that she lied about the police officer to protect herself. Now, your motion cites—
[ROBERSON’S ATTORNEY]: Our position is that’s our defense [that] she is lying to protect herself. You are saying that that is not true. But that’s our position.
[THIRD PROSECUTOR]: But you have no proof of that. That’s the point.
[COURT]: Hold on.
[THIRD PROSECUTOR]: Object — at the end of the day, it’s our position that unless it falls under one of these three exceptions, she can ask have you ever lied or have you ever lied to your mother, that’s fair game. But to make a specific allegation about sex, which is what she would have to do to bring up the [Lee] ease[,] is against the rule that we’re discussing, [Rule] 412. And in that case, she cannot do that.
I understand she can attack her credibility in terms of lying, but if that lie brings out some allegation of sex, then that rule prohibits it.
[COURT]: Here is what we are going to do.... Now, as to the other problem. This — her mother defendant [sic][Lee], Of course, No. 1, it’s not timely. No. 2, there is no proper service because the victim wasn’t notified.
[ROBERSON’S ATTORNEY]: No proper what?
[COURT]: Notice. The rule says it has to be served on the victim. The certificate says just on the district attorney’s office.
The other thing is it’s my understanding under this rule what we can do is, you are supposed to have an offer of proof or you can — and if that offer of proof is sufficient, you can give testimony in chambers from both the alleged victim, the mother, and [Lee], I think when we talked about kind of how do we know if it’s false or not, I think that’s where that comes into play. We don’t have that.
So we are down to 1, does [Rule] 412 cover this? And I think it does, inso *217 far as you start talking about sexual intercourse and perceived pregnancy. So even if it comes in at all, then those subjects can’t be talked about.
Now the question is if her lying is an issue, then how do you get to it? One way is through reputation and opinion. The next problem we have is — is asking her, the alleged victim, about a specific instance of misconduct allowable under [Rule] 608? [9] Normally, you don’t get into that. You just get into reputation or opinion. Let’s assume that you can get into that. You can’t — cannot be used as substantive evidence. Whether or not she lied to her mother cannot be used as substantive evidence as to the allegation against Roberson.
Does anybody have any disagreement with that last statement? I think that’s pretty clear.
[ROBERSON’S ATTORNEY]: Whether or not she lied to her mother?
[COURT]: Whether she lied to her mother, let’s assume she admits that, then I think — then the jury would have to be instructed that that prior inconsistent statement cannot be used as substantive evidence as to the charge of Mr. Roberson. But it’s only to her credibility.
Does everybody agree with that?
[THIRD PROSECUTOR]: Yes, Your Honor.
[ROBERSON’S ATTORNEY]: Yes.
[COURT]: Now, the next question is does it pass [Rule] 408?[10] Does the probative value of her telling a teenage child, lying to her mother about sex, is that outweighed by a danger of unfair prejudice? Unfair prejudice being defined in one of these cases as improper basis of a decision, emotional decision.
Does the State have any physical evidence in this case?
[PROSECUTOR]: Physical evidence, no, we don’t have—
[COURT]: So it’s a close question. It’s her saying it against him.
[PROSECUTOR]: We also have corroborating evidence that the defendant admitted, defendant’s statement that he did.
[COURT]: Okay. But other than that, any semen, DNA?
[PROSECUTOR]: No, Your Honor.
[COURT]: Here is my inclination. I’m going to look at it tonight, but my inclination is this. That the defense not be able to get into what the subject was, not the pregnancy, not the sexual intercourse, but that they do get to ask did she lie.
Now, the interesting question is if you ask the alleged victim did you lie to your mother and she says no, now you are allowed to bring in the mother— but anyway, we will get to that if we get to it.
[ROBERSON’S ATTORNEY]: I think our entire position is that this girl has a history of having sex with boys and then instead of admitting it to her mother, she comes up with stories or lies to protect herself from her mother’s wrath. Our position is she did that in February when her mother questioned her and called her about having sex with [Lee]. *218 Our position is that she did the same thing in June when she ran away from home and was gone, her mother asked her what she had done, she said no [sic]. But then in July when they come up with this positive pregnancy test, she then has to give some reason for this positive pregnancy test, and that’s when she named Roberson. It’s to protect herself. It’s just another thing she does to protect herself[,] lying about sex and then coming up with lies to pi'otect herself, and that’s our theory of defense.
So to say that we could ask her did she lie, but we can’t say this is about sex, I mean, it doesn’t affect [sic] we are able to cross-examine her and it goes to bias.
[COURT]: Well, no, I think — I think there is a case that says you are entitled to get into her imputation or character for truthfulness. That is fair game, and I think you can do that without getting into the subject matter because then we are getting into [Rule] 404.[11]
Let’s assume for [the] sake of argument what you aim saying is true, how is that relevant to whether or not she had sex with the defendant?
[ROBERSON’S ATTORNEY]: It’s relevant because our position [is] she didn’t. It’s just another lie that she’s telling to protect herself once again rather than admitting to her mother just like in February, she lied when asked her [sic], just like in June when she ran away and her mother asked her about it.
[COURT]: What I’m saying [is] if she lies, let’s just assume you can show she lied two other times, and you tell the jury she lies, does it matter that what it’s about she is lying, the subject matter?
[ROBERSON’S ATTORNEY]: Yes, specifically about sex because this is another instance. This is specifically about sex that she lies about.
[THIRD PROSECUTOR]: Judge ... if I may. Just in response, I want to clarify the record. The incident she is talking about in February involving [Lee], she says that this child has a pattern of lying. In June, this child ran away and her mother asked her about whether or not she had sex before this, there is no evidence whatsoever that there was sex.
She said she went to the boy’s house. She didn’t get in, and she was headed back home when the police picked her up. And [Parker] confirmed that there is no evidence—
[ROBERSON’S ATTORNEY]: That is not true. [Parker] did not confirm that.
[THIRD PROSECUTOR]: Confirmed with us. That’s what we expect the testimony to be at the trial. Well, my point is one way or another, there is nothing in the police record or anything else that confirms that she is making allegations, and we don’t have anything—
If he’s going to say something different, we don’t know about it. So she is making an allegation and at this point, we don’t have any basis for to [sic] create this pattern. And the pattern, as far as we know, [Lee], that’s it, and that’s not a pattern.
*219 [ROBERSON’S ATTORNEY]: Our position there [sic] is a pattern, and the pattern is [Lee] in February and [Parker] in June.
[COURT]: Is that her running away?
[ROBERSON’S ATTORNEY]: Yes.
[COURT]: Is that number 2?
[ROBERSON’S ATTORNEY]: Yes.
[COURT]: All right. I will look at it and see if I can find anything else on it. I haven’t been able to find anything so far. I understand what the defense is trying to do. I understand that.
[ROBERSON’S ATTORNEY]: But also, Your Honor, if they are saying because she wasn’t pregnant, we would never be able to introduce anything related to another source of pregnancy because she wasn’t pregnant. Well, the whole reason all this came about was because she thought she was pregnant, regardless of whether or not she later ended up being pregnant, she thought she was pregnant. So our position is because she thought she was pregnant, she had to give a name and she did.
And after she wasn’t pregnant doesn’t necessarily mean that that is not — so we can’t use this rule because she wasn’t pregnant. Well, that’s the whole issue. That’s how all this came about. That’s when she first said, Oh, yeah, by the way, this cop raped me because she thought she was pregnant.
[THIRD PROSECUTOR]: And that’s what [Rule] 412 goes to. [Rule] 412, the exception to [Rule] 412 might I add because the [rule] is to protect the victim from anything dealing with her past sexual behavior. The exception is if she’s pregnant, and she says the defendant is the source of that pregnancy. He can then bring in evidence otherwise. And she kept saying she thought she was pregnant, that was based on a pregnancy test that was given to her at the clinic.
[ROBERSON’S ATTORNEY]: But she did claim the defendant was the source of this pregnancy. That’s how all this came about.
[THIRD PROSECUTOR]: That’s not the allegation that is being made at this trial.
[COURT]: What she is saying is if there is no pregnancy, what’s the relevance? In other words, if you had — if you did have a pregnancy or you had any kind of pregnancy, whether it’s full term or whatever, and then you could show there was another source. But since that’s not an issue, so what, whether or not it is true or not there was somebody else or she made that allegation.
[ROBERSON’S ATTORNEY]: I guess our position is the fact that in her mind, she thought she was pregnant. She thought she was caught. So at the point she thought she was caught, it goes to motive, it goes to bias. She had to then come up with another story to continue to protect herself. That’s our position.
[COURT]: I do. I understand what you’re trying to do, and I am trying to weigh that to give the defense a chance to put on that defense versus what I think [Rule] 412 says.
[ROBERSON’S ATTORNEY]: Right.
[COURT]: I will keep looking at it. But again, my inclination is that if it comes in, it’s got to come in on reputation and character, reputation opinion for truthfulness and not get into the specifics.
Now, again, I will look at that and that is subject to whatever I find. *220 But I am trying to give you all a heads up.
¶ 22. On May 7, the circuit court ruled further on Roberson’s Rule 412 motion to use evidence of prior sexual conduct:
[COURT]: I was looking at the file this morning. We had the notice of intent to use prior sexual history of victim. I will do a written order later, but my ruling on that is No. 1, it was not timely. The trial date was May 5. It was filed May 4. It was supposed to be filed 15 days before the trial.
Also, it does not meet within the provisions of [Rule] 412 about newly[-]discovered [evidence that] could not have been obtained through the exercise of due diligence nor do I believe the issues to which the evidence relates to newly arisen evidence newly arisen [sic] in the case. So it doesn’t fall under those provisions.
So No. 1, it’s not timely. Number 2. The allegation is supposed to be in the form of an offer of proof. No. 1. Paragraph 2, we took care of. Paragraph 1, first of all, is not in the form of an offer of proof. And 2, it has to be a prior false allegation, and there is nothing about what’s said in here about whether it’s false or not. And 3, it’s my understanding reading Rule 412 that even the alleged victim can be called to make a proffer as to whether or not it’s clear or not — -it’s false or not. So [Lee], the mother and the alleged victim could have been called to establish the falseness of the information that /all are trying to get in. Also was not served on the victim. Then even if it were false, I have to decide if it is relevant and it pass [sic] through [Rule] 403. There are two cases that seem to indicate ... that talk about motivation and credibility of the witness. It’s a 6th amendment argument. I think it’s possible to make the argument that if those allegations were false that the 6th amendment, that it would come in, that it would be relevant as to the veracity and to show motivation. However, because it comes the day before the trial and it’s not fair to the State and knowing that we have already had two [o]mnibus hearings in this case to precisely do this, try to get the evidence about what each side has so we don’t run into this problem, I don’t see any other — I don’t see any other way but to deny the motion because other than that, we would have to continue the case to give the State an opportunity to meet that testimony.
[ROBERSON’S ATTORNEY]: The defense would ask for a continuance then.
[COURT]: Beg your pardon.
[ROBERSON’S ATTORNEY]: Well, the defense would make a motion for a continuance.
[COURT]: Well, let’s go ahead and take the other motion that has been filed.
[[Image here]]
[ROBERSON’S ATTORNEY]: As far as the 15[-]day notice, I understand that that notice is 15 days or shorter period of time as the Court determines within its discretion, I guess that is reasonable. So I guess is the Court saying at this point, we would be held to the 15 days only or it could be looked at as newly[-]discovered information?
[COURT]: Well, that’s what I read a few minutes ago, that within the discretion if it’s newly discovered and could not have been obtained through the exercise of due diligence or the issue to which such evidence relates has newly arisen in the case. If it’s *221 [sic] answer is no on either one of those, then it doesn’t fall within the provisions where I can go outside the 15[-]day notice. And the only other thing is if I allow it, the State can’t meet it and they ask for a continuance, I’m going to have to grant it. This has been on the docket what—
[PROSECUTOR]: It was continued the last time in January, Your Honor, when the Court had the suppression hearing. At that time, the defense counsel requested additional time to prepare the case because the suppression hearing suspended the trial. It was the first week in January. And defense counsel said pending the Court’s ruling in the suppression hearing, we would like a later court date set.
[[Image here]]
[SECOND PROSECUTOR]: I was only going to say I think the Court, Your Honor, you made a statement that if you did allow them to go outside the 15-day [period] and the question was whether or not we would be able to meet response in that motion, I guess my only position is still to go outside of 15 days, they haven’t met the other threshold as to whether or not there’s newly discovered [sic], something that couldn’t have been determined or couldn’t have sought out the records from [the y]outh [c]ourt prior to May or prior to April.
[COURT]: The other problem I am having with this is the same problem we had Monday without the testimony, I really don’t even know what y’all are trying to get at. For instance, the Paragraph 1 in the notice of intent, well, I don’t see anywhere in here where you say it was false. Well, if it’s true, it doesn’t come in. It has to be a false prior allegation.
[[Image here]]
Counsel, under [Rule] 412, how are you going to get sexual misconduct into evidence in this case?
[ROBERSON’S ATTORNEY]: If it was a prior false allegation.
[COURT]: Well, you are not talking about her sexual — you are saying she has made a false allegation against someone else, correct?
[ROBERSON’S ATTORNEY]: We believe that could be the case, Your Honor.
[COURT]: Do you want to make any kind of proffer as to why I should take this outside of the 15-day rule?
[ROBERSON’S ATTORNEY]: As to— we do not have a proffer to that because we have not had access to look at the [youth court] records. But as to the 15-day rule, we did file this [the motion seeking the youth court records] back in April and though it was not ruled on, we did intend to meet the 15-day requirement by filing for this back in April.
We find no error with the circuit court’s decision. First, as pointed out by the circuit court, Roberson failed to make any offer of proof as to a prior false sexual allegation. It is clear that evidence of any of Jane’s prior sexual conduct would not fall under any other exception in Rule 412. Although there was some evidence of a prior sexual encounter with Lee, Roberson utterly failed to prove that Jane had made a false allegation of prior sexual contact with Lee.
¶ 23. Furthermore, even if Roberson had made a proper offer of proof, the circuit court was entitled to deny the motion on the basis of its untimeliness and Roberson’s failure to serve the notice on *222 the victim. Although a Rule 412 motion can be filed later than fifteen days before trial where there is newly-discovered evidence, Roberson failed to show that the motion was filed on May 4 due to newly-discovered evidence. In short, the circuit court was not manifestly in error for denying the motion.
¶ 24. This contention of error is without merit.

3. Youth Court Records

¶ 25. On April 17, 2009, Roberson filed an ex parte motion in the circuit court requesting that the circuit court compel the youth court to release its records related to Jane. However, Roberson failed to set the motion for a hearing. As a result, the motion was addressed on May 4, at the same time as Roberson’s Rule 412 motion. Ultimately, the circuit court ruled that it did not have the jurisdiction to compel the youth court to release its records. The circuit court found that Roberson would have to petition the youth court to release the records to the circuit court for an in camera inspection. The circuit court then delayed the trial until May 7 in order to give Roberson time to petition the youth court.
¶ 26. As this appeal is not from the youth court, our record does not contain an account of what took place between Roberson and the youth court. However, it is clear that the records were not released to Roberson by May 7. The circuit court again found that it had no authority to compel the records from the youth court, and trial proceeded. On appeal, Roberson contends that the circuit court erred in not compelling the youth court to release its records. He cites In re J.E., 726 So.2d 547 (Miss.1998) as support for his contention.
¶ 27. In J.E., the Mississippi Supreme Court concluded that the Harrison County Family Court incorrectly refused to release its records to a defendant who had been accused of sexually assaulting a child. Id. at 553-54 (¶ 24). Notably, the case does not involve an appeal of an order of a circuit court refusing to compel production of youth court records for use in the circuit court during a defendant’s criminal trial. Nevertheless, we find J.E. helpful. In J.E., the defendant, Michael Harrison, was indicted, in the Circuit Court of Harrison County, for sexual abuse of a child. Id. at 549 (¶ 4). Michael petitioned the family court for release of all records of the minor child that he was accused of having abused. Michael also sought a transcript of the adjudicatory hearing in family court where J.E. had been adjudicated an abused child. The family court refused, and Michael appealed. Id. at 549 (¶ 5).
¶ 28. On appeal, our supreme court held that the family court abused its discretion in denying Michael’s motion:
We believe where the issues are weighty, as here, the best interest of the child, as well the proper and just functioning of our youth court system, demands that Michael have limited access to the materials he seeks. This provides for an expeditious resolution of this criminal matter, which is not only in the best interest of J.E. and essential to the functioning of the youth court system, but, in a much larger sense, is important to the interests of our system of justice.
Id. at 553 (¶ 22). The court went further and announced the procedure to be followed in such circumstances:
As such, we adopt the procedure advanced in Ritchie, supra [Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ]. Therefore Michael is entitled to the disclosure of information relevant to his defense before trial. The trial judge will inspect the records to determine if there is any information *223 material to Michael’s case. Such information will be disclosed to Michael. However, Michael has no right to full disclosure or inspection of the agency records. Also, as noted in Ritchie, this duty to disclose is an ongoing duty, as information deemed irrelevant upon first inspection may later become important. By following the procedure of submitting the confidential family court records to the circuit court judge for in camera inspection and the disclosure of any information that is relevant to Michael’s defense to Michael, the State’s interest is protected, our statutory scheme is satisfied, our youth courts function within constitutional parameters, and our rules of discovery are honored, while allowing Michael limited access to information which might prove vital to his defense.
Id. at 553 (¶ 23).
¶ 29. Roberson complains that “[t]he trial court here should have done more to protect Roberson’s rights[,] such as affording defense counsel time to go to Youth Court and obtain authorization to release the records for at least an in camera inspection.... ” Resolution of this issue is complicated by two facts. First, there is no evidence in the record to suggest that Jane had falsely accused anyone in a prior sexual encounter. Consequently, there is no reason to believe that the State was aware of any such conduct on the part of Jane and, therefore, was under a duty to voluntarily disclose any such information to Roberson as Brady material. Second, Roberson did not timely seek assistance from the circuit court. Although, as stated, Roberson filed a motion with the circuit court on April 17, 2009, seeking records of the youth court, he never noticed it for hearing. Therefore, even if we were to treat his motion as a discovery motion, we would be compelled to find that he waived it, because he failed to timely present in to the circuit court. The motion was brought to the attention of the circuit court on May 1, 2009, when the circuit clerk set all outstanding motions for hearing. Moreover, it was not served on the State, as Roberson sought ex parte disposition of it. The circuit court here did, in fact, delay the trial to give Roberson the opportunity to petition the youth court. On May 4, 2009, Roberson filed a motion in the youth court, requesting that it release its records to the circuit court for an in camera review. On May 6, 2009, Roberson filed a motion to compel the release of the records in the youth court, apparently after the May 4 motion failed to yield the records. On May 7, 2009, the youth court prosecutor filed a response to Roberson’s motions to release the records. The response claimed that Roberson’s motions had not been served on the proper parties, namely the youth court prosecutor and Jane’s guardian ad litem. The prosecutor contended that there was a conflict because Jane’s guardian ad litem was married to Roberson’s attorney. The response further alleged that “disclosure is not in the best interest ... of the child, the public safety, or the functioning of the youth court.” Nothing further is contained in our record to indicate what happened in the youth court.
¶ 30. We want to be clear. Roberson’s Sixth Amendment right to a vigorous cross-examination of his accuser, Jane, trumps any state statutory protection granted Jane as a youthful offender. Davis v. Alaska, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Consequently, we cannot say that a circuit judge presiding over a defendant’s criminal trial where there is a serious allegation that the prosecuting witness may have falsely accused another under circumstances similar to those presented in the instant trial is powerless to protect the defendant’s constitutional rights, if those rights are im *224 pacted by a youth court’s failure or refusal to produce relevant records.[12] However, Rule 412 provides a procedural framework that must be complied with as prerequisite to the exercise of that right against a victim of a sex crime. As stated, Roberson failed to comply with the provisions of the rule. Notwithstanding his failure to comply with the rule, Roberson complains that the trial court should have done more to protect his rights. We fail to discern what it is that Roberson would have had the trial court do under the factual scenario presented one day prior to trial. Roberson’s Rule 412 motion did not contain any allegation that Jane previously had falsely accused an individual of a sexual encounter with her, nor was the motion served on the State and Jane at least fifteen days prior to trial, as required by the rule. Therefore, even if the youth court had produced, either voluntarily or by compulsion, Jane’s records, Roberson still would have not been able to use them because he failed to comply with the requirements of Rule 412. We do not read Davis to hold that a state is precluded from prescribing procedural prerequisites for a defendant’s exercise of his Sixth Amendment right of cross-examination of a victim of a sex crime. We have already noted that there is nothing in the record to indicate the existence of any Brady materials among the youth court records that were sought. Under the holding in J.E., Roberson was not entitled to engage in a fishing expedition, as he was not entitled to view all of Jane’s youth court records.
¶ 31. This contention of error is without merit.

k. Ineffective Assistance of Counsel

¶ 32. Roberson claims that he was denied effective assistance of counsel because his trial counsel waited until May 4 to file his Rule 412 notice. Roberson also complains that his trial counsel failed to obtain Jane’s youth court records and that “records from Brentwood were never subpoenaed.” As to the latter, Jane’s records from Brentwood were provided to Roberson by the State; however, they were inadmissible at trial because Roberson was unable to properly authenticate the documents. Roberson claims that his trial counsel should have secured a subpoena duces tecum for the records to ensure that they would be admissible at trial. In order to prevail on a claim of ineffective assistance of counsel, Roberson must show that his trial counsel “was deficient” and that the deficiency “prejudiced the defense.” Doss v. State, 19 So.3d 690, 694-95 (¶ 7) (Miss.2009) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
¶ 33. Rule 22(b) of the Mississippi Rules of Appellate Procedure states that: “Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record." (Emphasis added). Where the factual basis for an issue is not fully apparent, we will affirm without prejudice to a defendant’s right to raise the issue during post-conviction proceedings. During post-conviction proceedings, Roberson may be able to introduce the youth court records to show what additional benefit they would have provided to him. Roberson’s trial counsel will also be available to testify about counsel’s trial strategies. Our supreme court has noted that inaction by trial counsel that involves evidence outside the record “cannot properly be addressed” *225 on direct appeal. Neal v. State, 15 So.3d 388, 406 (¶ 42) (Miss.2009). In short, Roberson’s ineffective-assistance-of-counsel claim can be more adequately addressed during post-conviction proceedings, where additional evidence may be available in support of the claim. Thus, we affirm without prejudice to Roberson’s right to raise the issue of the effectiveness of his counsel during post-conviction proceedings.
¶ 34. This contention of error is without merit.

5. Weight of the Evidence

¶ 35. In his final contention of error, Roberson contends that the overwhelming weight of the evidence does not support his conviction. We will reverse a conviction as against the overwhelming weight of the evidence only when “to allow it to stand would sanction an unconscionable injustice.” Pruitt v. State, 28 So.3d 585, 588 (¶ 11) (Miss.2010) (quoting Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)). When reviewing the weight of the evidence, we weigh it “in the light most favorable to the verdict.” Id. at 589 (¶ 11) (quoting Bush, 895 So.2d at 844 (¶ 18)).
¶ 36. Roberson contends that Jane’s testimony “was hopelessly contradictory.” He points out that Jane reported to the Brentwood staff that the assault occurred on the ground, while Jane testified at trial that Roberson assaulted her on the hood of his patrol car. Roberson also contends that his confession was not voluntary. Roberson points out that his confession also differed from Jane’s testimony as to whether the assault occurred on the way to the police station or after leaving the police station and as to whether the assault occurred inside Roberson’s patrol car. Roberson notes that there is no physical evidence in this case, such as DNA. Roberson points to a minor discrepancy in Tara’s testimony, in that she testified at trial that Jane returned home at approximately 5:45 a.m., but had previously stated that Jane was brought back home at approximately 5:15 a.m. As to the testimony of Mika McDaniel, who dated Roberson around the time of the assault, Roberson dismisses it as the product of “scorn and jealousy.”
¶ 37. McDaniel testified that Roberson admitted to her that he had sex with Jane, although McDaniel stated that Roberson had said the sex was consensual. As to Roberson’s argument that her testimony was the product of “scorn and jealousy,” the jury heard that McDaniel and Roberson had been in a romantic relationship, but that they were no longer in a relationship because Roberson had chosen to return to his wife. The discrepancy in Tara’s testimony was pointed out to the jury during cross-examination. More importantly, the discrepancy in Jane’s testimony as to the exact location of the assault was questioned during her cross-examination by Roberson’s attorney. As to the differences between Roberson’s confession and Jane’s account of what happened, the jury heard both Roberson’s confession and Jane’s testimony. Furthermore, neither the recording of the confession nor a transcript of it have been provided in the appellate record, so it is impossible for this Court to determine the extent of the discrepancies between the statement and Jane’s testimony. It is Roberson’s responsibility, as the appellant, to provide this Court with a record sufficient “to show the occurrence of the error.” Younger v. State, 931 So.2d 1289, 1291 (¶ 5) (Miss.2006) (quoting King v. State, 857 So.2d 702, 714 (¶ 12) (Miss.2003)).
¶ 38. As our supreme court has noted, “[t]he jury is the sole judge of the weight of the evidence and the credibility of the witnesses.” Lima v. State, 7 So.3d 903, 910 (¶ 35) (Miss.2009) (quoting Mohr v. State, 584 So.2d 426, 431 (Miss.1991)). *226 Several common points of what happened were shared by both Roberson’s confession and Jane: that Roberson sexually assaulted Jane, that he did so near a levee in Washington County, and that he did so during the time when he took her into custody after Tara had called the police. Furthermore, McDaniel testified that Roberson had admitted to her that he had sexual relations with Jane. Whether the assault occurred on the way to or from the police department and the exact location of the assault were not consistently testified to. Given the conflicting evidence, it was the jury’s prerogative to determine what actually happened between Jane and Roberson. Under the circumstances, allowing Roberson’s conviction to stand does not sanction an unconscionable injustice.
¶ 39. This contention of error is without merit.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF SEXUAL BATTERY OF A CHILD UNDER EIGHTEEN BY A PERSON IN A POSITION OF AUTHORITY AND TRUST AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY YEARS TO SERVE AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. We have changed the names of the minor victim and her mother in order to protect the victim's identity.

. By the time of trial, Lieutenant Gibbs no longer worked for the GPD, but instead was employed by the Washington County Sheriff’s Department.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Unknown to the officers, Roberson recorded part of his interview at the station. At the suppression hearing, the tape was played. Roberson contended that his statement that "as serious as these allegations are, I feel it's in my best interest to have an attorney present” was audible on the tape. The recording has not been made part of the appellate record; therefore, we cannot consider it. See Jones v. State, 776 So.2d 643, 649 (¶ 17) (Miss.2000).

. The trial was supposed to begin on May 5, 2009. However, on May 4, the circuit court delayed the trial until May 7, 2009, to give the defense time to attempt to get records from the youth court.

. As with the victim and her mother, this individual’s name has been changed.

. This name has also been changed.

. Rule 616 of the Mississippi Rules of Evidence deals with witness bias.

 Rule 608 of the Mississippi Rules of Evidence pertains to evidence of character and conduct of witnesses.

. Rule 403 of the Mississippi Rules of Evidence governs the exclusion of evidence on the basis of prejudice, confusion, or waste of time.

. Rule 404 of the Mississippi Rules of Evidence governs when character evidence is admissible.

. We note that Mississippi Code Annotated section 43 — 21—26l(l)(c) (Rev.2009) authorizes a youth court, under certain conditions, to release records involving children to ‘‘[a] judge of any other court or members of another court staff.”