FAIR, J.,
for the Court:
¶ 1. Two men in a pickup were seen fleeing the scene of a drive-by shooting in Vicksburg. A short time later, and not too far away, Eric Wallace and a friend were pulled over for speeding. Wallace gave officers a half-empty pistol containing cartridges that matched shell casings found at the scene. Wallace was later convicted of three counts relating to the shooting, and he appeals. We affirm.
FACTS
¶ 2. Around 1:30 a.m. on August 19, 2011, someone fired multiple shots in front of a duplex on Jackson Street in Vicksburg. Bullets hit one side of the duplex and a van parked in front. The police were dispatched at 1:33 a.m. A neighbor reported seeing a single-cab pickup with its headlights off driving away from the scene. She saw two men in the vehicle, with one driving and one standing in the bed. The driver’s window was down. Six .40-caliber shell casings, manufactured by Federal Ammunition, were found in a church parking lot across the street from the duplex.
¶ 3. At 1:47 a.m., Vicksburg police stopped Wallace and a passenger in a single-cab pickup on Interstate 20, headed toward Louisiana. Wallace was driving over '90 miles per hour. The officers, who had received instructions to be on the lookout for a single-cab pickup with two occupants, asked Wallace whether he had a gun in the vehicle. Wallace produced a .40-caliber pistol containing four Federal-branded cartridges — one in the chamber and three in the magazine. The pistol had a total capacity of 15 rounds when fully loaded. Wallace and his passenger consented to a gunshot residue test. The passenger came back clean, but Wallace was positive for residue on the outside of his left hand.
¶ 4. A projectile was recovered from the scene that bore “class characteristics” consistent with Wallace’s gun, specifically the number of grooves and lands and the direction of the rifling of the barrel. The casings found at the scene were the same caliber and brand as the unfired cartridges in Wallace’s gun, and the recovered casings carried marks that, in the opinion of the prosecution’s forensics expert, were unique to those produced by Wallace’s gun.
¶ 5. Wallace is paralyzed from the waist down and cannot stand; he could not have been the man standing in the pickup bed. However, Wallace can drive by manipulating the pedals with a stick held in his right hand. The prosecution’s theory of the case was that Wallace had shot at the vehicle and duplex from the driver’s seat of his pickup. Wallace’s passenger, Jef *523 frey Lewis, apparently was not charged with a crime relating to the shooting.
¶ 6. Wallace and Lewis testified that they had been at a club/restaurant until around 1:15 to 1:30. After that, they visited Wallace’s brother at a car wash some distance away, and were on their way to Lewis’s home when they were stopped. Several witnesses testified to seeing Wallace at the club around the time Wallace and Lewis said they were there. Wallace also denied knowing the victims, and he pointed out that they had admitted they did not know him, either. Nonetheless, Wallace was convicted of all three charges, and he appeals.
DISCUSSION
1.Drive-by-Shooting Instruction
¶ 7. In his first issue, Wallace contends that the jury instruction for the drive-by-shooting count lacked an essential element of the crime — specifically, that he had “knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life” attempted to shoot someone. “[Fjailure to instruct the jury properly on the essential elements of the [offense] requires reversal.” Bolton v. State, 113 So.3d 542, 544 (¶ 4) (Miss.2013) (citation omitted).
¶ 8. The crime of drive-by shooting is defined by Mississippi Code Annotated section 97-3-109(1) (Rev.2006) as follows:
A person is guilty of a drive-by shooting if he attempts, other than for lawful self-defense, to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life by discharging a firearm while in or on a vehicle.
The jury was charged to find Wallace guilty if the State proved beyond a reasonable doubt that he did (reproduced as it appeared in the instruction, in relevant part only):
1. attempt to cause serious bodily injury to another;
2. by discharging a firearm while in or on a vehicle;
3. without acting in lawful self-defense.
¶ 9. Wallace’s complaint is that the instruction omits what he contends is the required intent element of attempting “knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life,” words taken from the statute.
¶ 10. It is not clear why Wallace believes reversible error would result from the omission of the those words; they would broaden the set of facts under which he could be convicted. At any rate, Wallace’s argument relies on a misreading of the statute. Essentially the same issue was present in Morris v. State, 748 So.2d 143, 146-47 (¶¶ 9-15) (Miss.1999). There, the Mississippi Supreme Court examined the aggravated assault statute, which has substantially the same relevant language as the drive-by-shooting statute. The court reiterated its prior holding that:
As can be readily seen, one violates the statute by simply attempting to cause serious bodily injury. One also violates the statute when one causes serious bodily injury either intentionally or “recklessly under circumstances manifesting extreme indifference to the value of human life.” The indictment mixes the concept of attempt which, as noted here-inabove, embraces the element of intent, with the concept of actually causing injury through recklessness, which requires no specific intent. The indictment goes on to specify the exact conduct charged and, therefore, standing alone, is salvageable.
*524 The jury instructions were drafted in conformity with the indictment, however, and contained the phrase “recklessly attempt.” This phrase was, in turn, used as a spring board for the prosecutor to argue that the jury need not find an intent to run over Lee in order to find Harris guilty of attempting to run him over. An objection to that argument was erroneously overruled.
Many courts have recognized “‘intentional’ and ‘reckless’ are inconsistent terms.”
Those terms are mutually exclusive when applied to the statute here in question.
Id. at 146 (¶ 10) (quoting Harris v. State, 642 So.2d 1325, 1327-28 (Miss.1994)).
¶ 11. As the supreme- court explained, “knowingly or recklessly” is the intent requirement applicable when someone is actually injured. When the prosecution is for an attempt, attempt itself is the correct intent element, and it requires specific intent; an attempt cannot be done ■recklessly. Had the trial court given the instruction Wallace now contends it should have, reversible error would have resulted. The instruction given was correct and this issue is without merit.
2. Ineffective Assistance of Counsel
¶ 12. Wallace next argues that his defense counsel at trial was constitutionally ineffective for failing to request alibi and circumstantial-evidence instructions.
¶ 13. The State admits Wallace would have been entitled to an alibi instruction. Wallace presented a total of four witnesses accounting for his whereabouts the night of the shooting, which occurred around 1:30 a.m., with the 911 calls being placed at 1:33. Two employees of the club placed Wallace there at 1:20 and sometime between 1:30 and 2:00, respectively. Lewis, Wallace’s passenger when he was stopped, testified that they left the club between 1:15 and 1:30 and drove to meet Wallace’s brother at a car wash. Wallace himself put his time of leaving the club at 1:20 to 1:30 and, like Lewis, said they went to talk-to his brother. Wallace and Lewis were stopped by the police at 1:47 a.m.
¶ 14. The State disagrees that Wallace would have been entitled to a circumstantial evidence instruction. A circumstantial evidence instruction would have been required “only when the prosecution can produce.neither an eyewitness nor a confession/statement by the defendant.” Grayer v. State, 120 So.3d 964, 968 (¶ 11) (Miss.2013). The State’s contention is essentially that the circumstantial evidence — -specifically the shell casings found at the scene and the gunshot residue on Wallace’s hand — is so strong it somehow becomes direct evidence. This is assertion is simply wrong; these are textbook examples of circumstantial evidence. “Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.” McInnis v. State, 61 So.3d 872, 875 (¶ 11) (Miss.2011) (citation omitted). Direct evidence would include confessions and eyewitnesses to the gravamen of the offense charged. Kirkwood v. State, 52 So.3d 1184, 1187 (¶ 10) (Miss.2011). No direct evidence was presented in this case.
¶ 15. The fact that trial counsel could have, but did not, request these instructions is not necessarily dispositive of an ineffective assistance claim. Instead, we undertake the two-part analysis outlined by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “First, the defendant must show that counsel’s performance was deficient_ Second, the defendant must show that the *525 deficient performance prejudiced the defense.” Stringer v. State, 454 So.2d 468, 477 (Miss.1984) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052).
¶ 16. There is also the threshold question of whether this question is ripe for review on direct appeal. Mississippi Rule of Appellate Procedure 22(b) provides that issues such as ineffective assistance of counsel, which may be raised in post-conviction-relief proceedings, are allowed on direct appeal only “if such issues are based on facts fully apparent from the record.”
¶ 17. “Traditionally, trial counsel’s decision regarding whether to request certain jury instructions is considered trial strategy.” Taylor v. State, 109 So.3d 589, 596 (¶ 27) (Miss.Ct.App.2013). Our supreme court has followed the United States Supreme Court’s cautioning that:
Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.
Howard v. State, 945 So.2d 326, 354 (¶ 57) (Miss.2006) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052) (citations omitted).
¶ 18. The parties have not stipulated that the record is sufficient to review this issue on direct appeal. See Read v. State, 430 So.2d 832, 841 (Miss.1983). Given that, and the fact that this claim is based on inaction of counsel, the reasons for which are not clear from the record, we deny relief on direct appeal without prejudice to a future post-conviction claim. See Robinson v. State, 25 So.3d 1084, 1086 (¶ 11) (Miss.Ct.App.2010).
3. Weight and Sufficiency of the Evidence
¶ 19. Wallace next contends that his convictions are not supported by sufficient evidence and, in the alternative, are against the overwhelming weight of the evidence. These are distinct, but related, inquiries. Wallace discusses them together, so we shall as well.
¶20. The inquiry as to sufficiency is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quotation omitted). “[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 21. Similarly, a new trial based on the weight of the evidence should be granted “only in exceptional cases in which the evidence preponderates heavily against the verdict.” Bush, 895 So.2d at 844 (¶ 18) (citation omitted). “[T]he evidence must be viewed in the light most favorable to the verdict[.]” Jenkins v. State, 131 So.3d 544, 551 (¶ 23) (Miss.2013). And the motion for a new trial is entrusted to the circuit judge, who had a first-hand view of the trial. “[R]eversal is warranted only if the trial court abused its discretion in denying [the] motion for a new trial.” Waits *526 v. State, 119 So.3d 1024, 1028 (¶ 13) (Miss.2013).
¶ 22. Wallace first notes that the casings were found about ten feet from the side of the road, and that his pistol ejected to the right. He contends that the shell casings found in the parking lot across the street, which were shown to have been fired by his gun, could not have been related to the shooting.
¶23. This argument is not persuasive for two reasons. First, the ballistics expert testified that the gun ejected to the right, but that the spent casings could fly either forward or back. Second, the exact position of the vehicle at the time of the shooting was not established; although a witness saw it in the road a short time later, it could have been in the parking lot at the time the shots were fired, or could have drifted into the parking lot (which had no curb or barrier to the street) as Wallace may have had difficulty steering the vehicle, operating the pedals with his stick, and shooting at the same time.
¶ 24. Wallace also contends he had a “strong alibi” from “two totally disinterested witnesses,” the employees of the club; but this is not the case. Wallace himself admitted he left the club around 1:30. Given the short distance from the club to the scene of the shooting and the uncertainty of the times involved, this testimony, even if credited, is not persuasive. Moreover, the jury was not required to believe it since both Wallace and Lewis testified that they could have left as early as 1:15 or 1:20, giving them plenty of time to arrive at the scene of the shooting.
¶ 25. Given the evidence we have already discussed at length, Wallace’s convictions are supported by sufficient evidence and are not against the overwhelming weight of the evidence.
4. Juror Issues
¶ 26. In his next issue, Wallace contends that he is entitled to a new trial because, the morning before the last day of trial, a man allegedly sent a text message to one of the jurors stating “please don’t send my brother to jail.” The juror first informed the court of the message after the jury had reached its verdict. She knew the man’s name and said that she had seen him in the courtroom and that he knew where she lived. The juror was apparently concerned for her safety after leaving the courtroom. At that time, the juror was questioned briefly by the trial judge on the record. The judge asked the sheriffs department to investigate, and the juror left.
¶27. In his motion for a new trial, Wallace alleged that the juror had “made improper contact with a friend of defendant[,] who had been present in the courtroom. Said juror then claimed that the individual contacted her by text[;] however, police were unable to find any such text message.” In his arguments on the motion, the attorney speculated that the juror had some “nefarious” motive or bias against Wallace. On appeal, Wallace presents a different theory; he contends that the juror was improperly influenced. In the alternative, Wallace argues that the trial court had a sua sponte duty to further investigate the alleged contact.
¶ 28. Claims made for the first time on appeal are procedurally barred. Tate v. State, 912 So.2d 919, 928 (¶ 27) (Miss.2005). In the alternative, we see no merit to the contentions. Wallace fails to cite any authority holding a trial court in error under circumstances like those present in this case. Instead, “[i]n order for the duty to investigate to arise, the party contending there is misconduct must make an adequate showing to overcome the presumption ... of jury impartiality.” Glad- *527 ney v. Clarksdale Beverage Co., 625 So.2d 407, 418 (Miss.1993). The trial court immediately brought the alleged communication to the attention of the parties, and there was an investigation by the sheriff’s department. The investigation led Wallace’s attorney to believe no communication had occurred, though his reasons for this conclusion are not clear from the record.
¶ 29. The trial judge correctly dismissed claims of juror misconduct as speculation, but he further found that assuming the juror was being truthful, she had not been influenced. “Once it is determined that the communication was made and what the contents were, the court is then to decide whether it is reasonably possible this communication altered the verdict.” James v. State, 912 So.2d 940, 950 (¶ 18) (Miss.2005) (citation omitted). The trial court could not delve into the internal deliberations of the jury. See M.R.E. 606(b).
¶ 30. Here, there was no extraneous substantive information about the defendant or the alleged offense; there were no “extra-record facts affect[ing] an issue of importance in the case and ... qualitatively different from the evidence properly before the jury.” See Salter v. Watkins, 513 So.2d 569, 571 (Miss.1987).
¶ 31. The trial court’s decision as to whether it is reasonably possible the communication influenced the juror is reviewed for an abuse of discretion. See id. at 574. The fact that the defendant’s friends or family would not like to see him convicted would not be new information to a reasonable juror, nor was there any overt threat. Even if there might be some concern about the impropriety of the contact, it does not rise to the level that we could And the trial court abused its discretion. This issue is procedurally barred and without merit.
5. Amendment of the Indictment
¶ 32. In his final issue, Wallace takes issue with Count III of his indictment, shooting into a dwelling house, specifically 1708 1/2 Jackson Street, Vicksburg, Mississippi. This is the postal address of the right side of a duplex (when viewed from the street). Most of the proof at trial[1] showed that the bullets had actually struck the other side of the duplex, 1708, hitting a few feet away from the part of the building occupied by 1708 1/2. Wallace filed a.motion to dismiss Count III of the indictment, which the trial court addressed the morning before the second day of trial. The State’s position was that the indictment was sufficient, but ultimately it moved to amend the indictment from 1708 1/2 to 1708. The judge agreed, and the jury was instructed accordingly; it convicted Wallace of shooting into 1708.
¶ 33. Wallace’s argument on appeal is the amendment was illegal because the order to amend the indictment was never entered into the minutes, as required by Mississippi Code Annotated section 99-17-15 (Rev.2007). However, Wallace failed to make this objection while before the trial court. In Dunaway v. State, 398 So.2d 658, 659 (Miss.1981), the Mississippi Supreme Court reiterated its prior holdings that “a defendant must specifically bring the absence of an order on the minutes of the court allowing the amendment to the attention of the trial *528 court, or the error will be waived and it may not be raised for the first time on appeal.” (Quoting Sturgis v. State, 379 So.2d 534, 537 (Miss.1980)). The reason is that nonjurisdictional objections and exceptions to an indictment cannot be raised for the first time on appeal. Sturgis, 379 So.2d at 536. This issue has been waived.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF COUNT I, DRIVE-BY SHOOTING, AND SENTENCE OF TWENTY YEARS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A $5,000 FINE; COUNT II, SHOOTING INTO A MOTOR VEHICLE, AND SENTENCE OF FIVE YEARS, WITH TWO YEARS SUSPENDED AND TWO YEARS OF POST-RELEASE SUPERVISION; AND COUNT III, SHOOTING INTO A DWELLING, AND SENTENCE OF TEN YEARS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A $2,000 FINE; WITH ALL SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ„ CONCUR.

. At least one witness testified that the bullets actually struck 1708 1/2, though the State has repeatedly admitted that it was a mistake and 1708 was actually hit. The confusion perhaps stems from the fact that the occupant of 1708 1/2 was the owner of the van that was shot up, forming the basis of Count II of the indictment.