# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00264-COA

**WILLIS DELANO MURRAY**                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:           03/02/2021
TRIAL JUDGE:                HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED:  RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                            BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: LAUREN GABRIELLE CANTRELL
DISTRICT ATTORNEY:          JOHN K. BRAMLETT JR.
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED - 05/10/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., GREENLEE AND EMFINGER, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     Following a jury trial, Willis Murray was convicted of statutory rape and sentenced to serve thirty years in the custody of the Department of Corrections. On appeal, Murray argues that the trial judge erred by overruling a hearsay objection and by denying his requests for the victim's counseling records. Murray also argues that his trial counsel provided ineffective assistance. We find no reversible error and affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.    B.L.S.[1] was thirteen years old in 2013 when she met Murray online and began communicating with him.  Murray, who was then forty-six or forty-seven years old, initially used a fake name and posed as a teenager, but he eventually revealed his true name and age to B.L.S.  Murray persuaded B.L.S. to send him nude photographs and engage in sexually explicit video chats.  B.L.S. considered their relationship to be a "dating" relationship.

¶3.    B.L.S. testified that Murray, who lived in Texas, drove to Rankin County, Mississippi to visit her for the first time in December 2015.  According to B.L.S., the purpose of Murray's visit was "to have sex."  Murray entered B.L.S.'s room through her bedroom window around 2 a.m., and they engaged in oral sex and sexual intercourse.  Murray left through the same window around 6 a.m. and returned to his car, which he had parked nearby.  The next day, B.L.S. went to school for a half-day because she had an exam.  After school, B.L.S. drove her family's golf cart to the neighborhood pool house to meet Murray, who was waiting in his car.  After they had sex in Murray's car, Murray drove back to Texas.  B.L.S. could not recall the exact dates of Murray's visit, but she was certain that it occurred prior to her sixteenth birthday.  B.L.S. turned sixteen during the last week of December.

¶4.    B.L.S. testified that Murray drove from Texas to Mississippi to visit her six or seven times in 2016, and they continued to have sex in her house or his car.  On November 17, 2016, B.L.S.'s mother, E.S., discovered Murray in B.L.S.'s bedroom.  E.S. tried to detain Murray while her son called the police, but Murray escaped before the police arrived.

---

[1] Initials are used to protect the identity of the minor victim.

¶5.     Investigator A.J. DiMartino of the Rankin County Sheriff's Department examined B.L.S.'s cell phone and found a text message from "Murray" stating that he had been pulled over by the Pearl Police Department around 11:30 p.m. on November 16, 2016. Using that information, the Pearl Police Department confirmed Murray's identity. B.L.S. told DiMartino that she and Murray had engaged in sexual intercourse beginning in December 2015—prior to her sixteenth birthday.

¶6.     A Rankin County grand jury indicted Murray for statutory rape for having sexual intercourse with B.L.S. while she was fifteen years old.[2] Murray was later taken into custody in Texas and extradited to Mississippi. DiMartino interviewed Murray after he was extradited. According to DiMartino, Murray admitted that in 2013, he began communicating with B.L.S. through Kik, a messaging app. DiMartino testified that Murray also admitted that he drove to Mississippi to see B.L.S. in 2015 and that he and B.L.S. began having sex in 2016. However, Murray told DiMartino that he and B.L.S. did not have sex prior to her sixteenth birthday.

¶7.     At trial, DiMartino, E.S., and B.L.S. testified. In addition, a digital forensic investigator for the Rankin County Sheriff's Department testified regarding his examination of B.L.S.'s phone, which recovered hundreds of text messages between B.L.S. and Murray.

---

[2] Miss. Code Ann. § 97-3-65(1)(a) (Rev. 2015) ("The crime of statutory rape is committed when: (a) Any person seventeen (17) years of age or older has sexual intercourse with a child who: (i) Is at least fourteen (14) but under sixteen (16) years of age; (ii) Is thirty-six (36) or more months younger than the person; and (iii) Is not the person's spouse . . . .").

However, all the text messages were from 2016—after B.L.S.'s sixteenth birthday. B.L.S. testified that she and Murray previously communicated via Kik and video chats. B.L.S. also testified that the phone she turned over to law enforcement was not the same phone she had throughout her relationship with Murray, although it is not clear when she changed phones or what became of her prior phone(s). Murray did not testify or call any witnesses. Murray rested his case after introducing timecard reports from his employer showing the dates and times he was at work in Texas during December 2015. Those records were admitted by stipulation.

¶8.     The jury found Murray guilty of statutory rape, and the court sentenced him to serve thirty years in the custody of the Department of Corrections. Murray filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal. On appeal, Murray argues that the trial judge erred by overruling a hearsay objection and by denying him access to B.L.S.'s counseling records. Murray also argues that his trial counsel provided ineffective assistance by not requesting an alibi instruction, by not objecting to hearsay, by not requesting a limiting instruction, and by failing to follow proper procedures for requesting B.L.S.'s counseling records.

## ANALYSIS

### I.     Hearsay

¶9.     Murray argues that the trial judge erred by overruling his hearsay objection and allowing E.S. to testify about a neighbor's out-of-court statement. E.S. testified about a day

4

when she returned home from work early, and B.L.S. "quickly met [her] in the kitchen" and seemed "anxious." B.L.S. asked E.S. if she could take the family golf cart out, and E.S. agreed. E.S. testified that shortly after B.L.S. left, a neighbor knocked on her front door. When E.S. began to testify about what the neighbor said, Murray objected, and the trial judge sustained the objection. However, the judge reversed himself after the prosecutor stated the testimony was "not offered for the truth of the matter asserted but [to explain] what [E.S.] did next." The judge instructed the jurors that they could consider the neighbor's statement to explain why E.S. did what she did next but "not for the truth of the matter asserted." E.S. then testified that her neighbor told her that he had seen an "older" "African American man dressed in somewhat of teenage clothing" ("sagging blue jeans") "coming from the back of [E.S.'s] house."[3] E.S. and the neighbor then drove around the neighborhood looking for the man and for B.L.S., but they did not see either of them. When B.L.S. returned home later, E.S. told B.L.S. what their neighbor had said and questioned her about it. B.L.S. responded that no one had been in their house and that she did not "know what [E.S. was] talking about." E.S. testified that B.L.S. was either fourteen or fifteen years old at the time of the incident.

¶10.    On appeal, the State argues that the neighbor's statement was not hearsay because it was not offered to prove the truth of the matter asserted but only to explain why E.S. did

---

[3] B.L.S. is also African American. The record does not identify the race of the other members of B.L.S.'s family or the neighbor.

what she did next—i.e., she searched the neighborhood for the man and B.L.S. In the alternative, the State argues that the neighbor's statement was admissible as a "present sense impression." MRE 803(1). "We employ an abuse-of-discretion standard when reviewing claims that the trial judge erred by admitting hearsay." *White v. State*, 48 So. 3d 454, 456 (¶9) (Miss. 2010) (footnote omitted). "Admission or suppression of evidence is based on the discretion of the trial court, but the trial court's discretion must be consistent with the Mississippi Rules of Evidence." *Franklin v. State*, 136 So. 3d 1021, 1028 (¶22) (Miss. 2014). "Reversal is required only where abuse of that discretion can be shown to cause prejudice to the defendant." *Id*.

¶11. "Hearsay" is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c). "Hearsay is not admissible except as provided by law." MRE 802.

¶12. In support of its argument that the neighbor's statement to E.S. was not hearsay, the State cites *Dunn v. State*, 111 So. 3d 114 (Miss. Ct. App. 2013). In *Dunn*, the trial judge allowed a mother to testify that her twelve-year-old son told her that a man driving a van had offered him money in exchange for oral sex. *Id.* at 115 (¶3). The mother immediately went to look for the van, found it within minutes parked nearby, wrote down its license plate number, and reported the incident to police. *Id.* The police discovered that the van belonged to the defendant, and the son picked the defendant out of a photographic lineup. *Id.* at (¶4).

6

On appeal, this Court held that the mother's testimony was properly admitted because the son's statement was excepted from the hearsay rule as either an excited utterance or a present-sense impression. *Id.* at 115-16 (¶6) (citing MRE 803(1)-(2)). In the alternative, this Court held that the testimony "could also be considered not hearsay" because it "was offered to show the effect of [the son's] statements on [the mother] and her actions thereafter." *Id.* at 116 (¶7).

¶13.    In this case, the State argues that E.S.'s testimony about her neighbor's statement was not hearsay because it was offered for a similar purpose—to explain why E.S. went looking for the man reportedly seen leaving her house and B.L.S. However, *Dunn* is inapposite. In *Dunn*, the witness's "actions thereafter" were relevant because she found the van, which led to the defendant's identification. Here, in contrast, E.S.'s "actions thereafter"—looking for a man but not finding him—were irrelevant. *See* MRE 401. The only logically relevant purpose for this testimony was to show that a man (Murray) had been seen leaving B.L.S.'s house.[4] Thus, the neighbor's out-of-court statement was indeed offered "to prove the truth of the matter asserted in the statement," making it hearsay. MRE 801(c).

¶14.    As noted above, the State also argues that even if it was hearsay, the neighbor's statement was admissible under the present-sense-impression exception to the hearsay rule. MRE 803(1). However, the State did not make this argument at trial, and the record does not

---

[4] As discussed below, in her subsequent testimony, B.L.S. confirmed that the man the neighbor saw was Murray.

establish a foundation for admitting the neighbor's statement under this exception. Under Rule 803(1), "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is admissible as an exception to the hearsay rule. *Id.* This exception "is based on the theory that the contemporaneous occurrence of the event and the statement render it unlikely that the declarant made a deliberate or conscious misrepresentation." *Id.* advisory committee note. "Spontaneity is the essential factor" in determining whether a statement is admissible under this exception. *Id.* But in the present case, we do not know how much time elapsed between the event the neighbor witnessed and his subsequent conversation with E.S. Nor is there any evidence to establish the "spontaneity" of the neighbor's statement. Accordingly, we cannot affirm the trial judge's ruling on this alternative ground, which was neither raised nor considered at trial.

¶15. Nonetheless, "[w]e will not reverse a conviction based on a harmless error." *Chaupette v. State*, 136 So. 3d 1041, 1047 (¶12) (Miss. 2014). "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Jackson v. State*, 245 So. 3d 433, 439 (¶32) (Miss. 2018) (quoting *Pham v. State*, 716 So. 2d 1100, 1102 (¶12) (Miss. 1998)).

¶16. E.S. testified that the incident involving the neighbor occurred on an unspecified date when B.L.S. was fourteen or fifteen years old. However, B.L.S. testified that the incident occurred in 2016 when she was sixteen, the legal age of consent. Murray was indicted and convicted for having sex with B.L.S. in December 2015, when she was still fifteen years old.

8

Thus, the critical dispute at trial was whether Murray first had sex with B.L.S. in December 2015 (as B.L.S. testified) or only in 2016 (as Murray maintained). B.L.S.'s detailed testimony about Murray's visit to Mississippi in December 2015 (his first such visit) makes clear that the incident involving the neighbor did not occur during that visit. Murray admitted that he had sex with B.L.S. *after* her sixteenth birthday, so the fact that a neighbor may have seen him leaving her house after her sixteenth birthday was essentially cumulative evidence of non-criminal activity that Murray admitted. Under these circumstances, we conclude that the admission of this hearsay was harmless and does not require reversal.

¶17. On appeal, Murray also argues that this hearsay testimony violated the Confrontation Clause. U.S. Const. amend. VI. However, Murray did not raise this objection at trial, and "[a] general hearsay objection is insufficient to preserve an alleged Confrontation Clause violation for appellate review." *Morment v. State*, 315 So. 3d 475, 482-83 (¶31) (Miss. Ct. App. 2020) (quoting *Smith v. State*, 235 So. 3d 1441, 1445 (¶12) (Miss. Ct. App. 2018)), *cert. denied*, 314 So. 3d 1162 (Miss. 2021). Murray's "confrontation claim is therefore procedurally barred." *Id.* at 483 (¶31).

¶18. Moreover, Murray's Confrontation Clause claim is without merit. The Confrontation Clause "only applies to statements that are 'testimonial.'" *Corbin v. State*, 74 So. 3d 333, 338 (¶13) (Miss. 2011) (quoting *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). "Testimonial statements are those reasonably expected to be used 'prosecutorally,' such as confessions, affidavits, custodial police examinations, and depositions." *Rubenstein v. State*,

941 So. 2d 735, 754 (¶46) (Miss. 2006) (quoting *Crawford*, 541 U.S. at 51-52).  Here, the declarant was not making a testimonial statement when he simply told a neighbor that he had seen a man leaving her house.  *Cf. Giles v. California*, 554 U.S. 353, 376 (2008) (stating that the Confrontation Clause would not apply to "[s]tatements to friends and neighbors about [domestic] abuse and intimidation" because such statements are not testimonial); *see also State v. Mizenko*, 127 P.3d 458, 462 (Mont. 2006) ("[W]hen a declarant speaks with her neighbor across the backyard fence, she has much less of an expectation that the government will make prosecutorial use of those statements.").  Accordingly, E.S.'s testimony about the conversation does not implicate the Confrontation Clause.

## II. Counseling Records

¶19.   At a motion hearing fourteen days prior to trial, Murray's trial counsel made an ore tenus request to compel the State to disclose the name of "a counselor that [B.L.S.] was having counselor appointments with."  Murray intended to use this information to attempt to subpoena B.L.S.'s counseling records.  Murray alleged that B.L.S. was "sexual[ly] promiscu[ous]" and had been in "multiple relationships with different people."  He further argued that B.L.S.'s counseling records might provide evidence of such relationships.  Murray seemed to argue that B.L.S.'s other alleged sexual relationships were relevant because B.L.S. might have been confused about which person she had sex with in December 2015.  In response, the State argued that B.L.S. was "not waiving her medical privilege"; that the State did "not intend to call the counselor"; that the State did not have B.L.S.'s

10

counseling records; and that the records were not relevant. The trial judge denied Murray's request. The judge stated that because B.L.S. had "not waiv[ed] her privilege," the records were "not open to [Murray]." The judge stated that "[d]efendants can't just . . . go take a search through the counseling records of alleged victims of sexual assault."

¶20. Prior to trial, the State also made an ore tenus motion in limine to exclude any evidence of any prior sexual conduct of B.L.S. because Murray had not filed a motion pursuant to Mississippi Rule of Evidence 412(c). The trial judge granted the State's motion. During trial, the judge sustained multiple objections by the State based on his limine ruling and Rule 412.

¶21. On appeal, Murray argues that the trial judge erred by ruling that B.L.S.'s counseling records were privileged because there was no showing that B.L.S.'s "counselor" was a licensed physician or psychologist, and the privilege under Mississippi Rule of Evidence 503 does not extend to a licensed social worker or the like. *See Touchstone v. Touchstone*, 682 So. 2d 374, 379-80 (Miss. 1996); *see also* Miss. Code Ann. § 13-1-21 (Rev. 2019) (providing a privilege for certain "communications to a physician" and to certain other medical professionals); Miss. Code Ann. § 73-31-29 (Supp. 2020) (providing a privilege for certain communications to a "psychologist"). Murray points out that a licensed social worker has a general obligation to maintain clients' confidentiality but may be required to testify in a trial or other proceeding concerning an alleged crime against a minor. Miss. Code Ann. § 73-53-29(c) (Rev. 2017). Murray also notes that even evidence that is otherwise privileged

under Rule 503 "may be [discoverable] and admissible in limited situations where [it] is relevant, material and exculpatory." *Cox v. State*, 849 So. 2d 1257, 1272 (¶52) (Miss. 2003). Thus, Murray argues that the trial judge erred by denying his ore tenus motion without first inquiring into the identity of B.L.S.'s counselor or the content of the counselor's records. *See id.* at (¶53) (suggesting that the trial court conduct an in camera review of privileged records to determine whether they contain information that is material, relevant, and exculpatory).

¶22. We agree with Murray that we cannot know whether B.L.S.'s counseling records were privileged without knowing whether her counselor was a licensed physician, a psychologist, a social worker, or something else. Therefore, on the record before us, we cannot determine whether the Rule 503 privilege applies.

¶23. Nonetheless, we conclude that the trial judge properly denied Murray's ore tenus request to compel the State to disclose the counselor's identity. To begin with, the State is under no general duty to disclose the name of a victim's counselor. *See* MRCrP 17.2 (mandating certain disclosures by the State upon written request by the defendant). More important, it is clear that the evidence Murray sought to discover—evidence of B.L.S.'s alleged "sexual promiscuity" and other sexual relationships—was inadmissible under Mississippi Rule of Evidence 412. Under Rule 412, "evidence of a victim's past sexual behavior" "is not admissible in a criminal case involving an alleged sexual offense." MRE 412(a). This general rule is subject to limited exceptions, but a defendant who intends to

12

offer evidence in reliance on one or more of those exceptions must

> (A)    make a motion accompanied by an offer of proof describing the evidence;
>
> (B)    file the written motion and offer of proof at least 15 days before trial, unless the court sets a later time—including during trial—after determining:
>
>> (i)    the evidence is newly discovered and with reasonable diligence could not have been discovered earlier; or
>>
>> (ii)    the issue is newly arisen; and
>
> (C)    serve all parties and the victim.

MRE 412(c)(1). Here, Murray *never* filed a "written motion" under Rule 412, and his oral request was made only fourteen days prior to trial. *Id.* In addition, Murray failed to show that the evidence he sought was "newly discovered" or involved any "newly arisen" issue. *Id.* Indeed, the alleged relationships between B.L.S. and other men were discussed in text messages between Murray and B.L.S. more than *four years* prior to trial. Yet, Murray failed to file a timely pretrial motion under Rule 412.

¶24. This Court addressed a similar issue in *Roberson v. State*, 61 So. 3d 204, 222-25 (¶¶25-30) (Miss. Ct. App. 2010), *cert. denied*, 62 So. 3d 974 (Miss. 2011), *cert. denied*, 565 U.S. 983 (2011). In *Roberson*, the defendant, who was charged with sexual battery of a child, filed a pretrial motion asking the trial judge to compel the youth court to release records related to the victim. *Id.* at 222 (¶25). The information the defendant sought to discover was subject to Rule 412, but the defendant failed to file a timely motion under Rule

13

412. *Id.* at 210-11, 221-22 (¶¶19, 23). The trial judge denied the defendant's motion to compel, and this Court affirmed. *Id.* at 222-25 (¶¶25-30). We held that the trial judge properly denied the defendant's motion because "even if the youth court had produced . . . [the victim's] records, [the defendant] still would have not been able to use them because he failed to comply with the requirements of Rule 412." *Id.* at 224 (¶30). In this case, the trial judge properly denied Murray's ore tenus request to identify B.L.S.'s counselor for the same reason—even if Murray could have obtained B.L.S.'s counseling records, he could not have used them because he failed to comply with the requirements of Rule 412. *Id.*

### III. Ineffective Assistance of Counsel

¶25. Murray argues that his trial counsel provided ineffective assistance by failing to request an alibi instruction, failing to object to hearsay, failing to request a limiting instruction, and failing to seek access to B.L.S.'s counseling records in a timely manner. We address these arguments in turn below.

¶26. A claim of ineffective assistance of counsel may be asserted on direct appeal when the defendant is represented by appellate counsel who did not represent him at trial. *Ellis v. State*, 281 So. 3d 1092, 1099 (¶20) (Miss. Ct. App. 2019). "Generally," however, "ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (brackets omitted). "This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties

14

stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* (quotation marks and other brackets omitted). In addition, we may address such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.*

¶27. In the present case, the State does not stipulate that the record is sufficient to review Murray's claims. Accordingly, we may address Murray's claims only if the record "affirmatively demonstrates ineffectiveness of constitutional dimensions" or, in the alternative, shows that his "claims are without merit." *Id.* "If the record is not sufficient to address the claims on direct appeal," then we will "dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief." *Sandlin v. State*, 156 So. 3d 813, 819 (¶20) (Miss. 2013).

¶28. To prevail on a claim of ineffective assistance, the defendant must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Stated differently, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The defendant

15

"bears the burden of proving both prongs of *Strickland*." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. Ct. App. 2008). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶29.    "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation marks omitted). "Our Supreme Court has stated that, 'with respect to the overall performance of the attorney, counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim.'" *Pinter v. State*, 221 So. 3d 378, 386 (¶19) (Miss. Ct. App. 2017) (brackets omitted) (quoting *Carr v. State*, 873 So. 2d 991, 1003 (¶27) (Miss. 2004)).

### A.    Failure to Request an Alibi Instruction

¶30.    Murray's indictment alleged that he committed the offense of statutory rape between December 1, 2015, and a day in the last week of December 2015. At trial, B.L.S. testified that she first had sex with Murray after he entered her room through her bedroom window around 2 a.m. She testified that the following day, she went to school for a half-day for an exam and then returned home and had sex with Murray again around noon. She stated that Murray drove back to Texas after they had sex. B.L.S. believed these events occurred

16

sometime after December 8, 2015, although she was uncertain of the exact date. In an effort to establish an alibi, Murray offered time records from his employer showing that he had been at work in Texas until 3:13 p.m. on Wednesday, December 9, 2015, but he did not work on Thursday or Friday (December 10-11, 2015). The records also showed that Murray did not work on certain days during the following week. Murray did not testify at trial. Thus, his time records, which were admitted by stipulation, and B.L.S.'s testimony were the only evidence of his whereabouts in December 2015. On appeal, Murray argues that his trial counsel was ineffective because they[5] failed to request an alibi instruction.

¶31. "Traditionally, trial counsel's decision regarding whether to request certain jury instructions is considered trial strategy." *Wallace v. State*, 166 So. 3d 520, 525 (¶17) (Miss. Ct. App. 2014) (quoting *Taylor v. State*, 109 So. 3d 589, 596 (¶27) (Miss. Ct. App. 2013)). "Decisions that fall within the realm of trial strategy do not amount to ineffective assistance of counsel." *Pittman v. State*, 121 So. 3d 253, 258 (¶14) (Miss. Ct. App. 2013).

¶32. Moreover, "[t]he law relating to an alibi defense involves something more than a simple denial by the defendant that he was present at the precise time the crime was committed." *Sims v. State*, 213 So. 3d 90, 101 (¶43) (Miss. Ct. App. 2016) (quoting *Owens v. State*, 809 So. 2d 744, 746 (¶7) (Miss. Ct. App. 2002)). Rather, "the defense requires evidence that the defendant's location at the relevant time was so removed therefrom as to render it *impossible* for him to be the guilty party." *Id.* (emphasis added) (quotation marks

---

[5] Murray was represented at trial by two attorneys.

omitted). Thus, the trial court is not required to give an alibi instruction if, "based on the version of events contended for by the defense, it would remain within the realm of physical possibility for the defendant to have committed the crime." *Id.*

¶33. Here, we cannot say that trial counsel provided ineffective assistance by not requesting an alibi instruction. To begin with, Murray was not entitled to an alibi instruction because he failed to present any evidence that, if believed, would have made it impossible for him to have committed the crime. To the contrary, the only evidence Murray presented—his time records—showed that it was possible for him to have committed the crime as B.L.S. described. In addition, given the relative weakness of Murray's alibi evidence, trial counsel's decision not to request an alibi instruction was within the realm of reasonable trial strategy.[6] Accordingly, this decision does not amount to constitutionally ineffective assistance of counsel. *See Hamlin v. State*, 306 So. 3d 843, 844-45 (¶¶1-9) (Miss. Ct. App. 2020) (holding that trial counsel's failure to request an alibi instruction was not ineffective assistance because the defendant's own evidence showed that he was present in the county on three separate occasions during the time period alleged in his indictment for statutory rape and sexual battery).

### B.    Failure to Object to Hearsay

¶34. Murray next argues that his trial counsel provided ineffective assistance by failing to

---

[6] Trial counsel served the State with a notice of alibi, which was based on Murray's work records, but evidently decided not to request an alibi instruction at trial.

object to Investigator DiMartino's hearsay testimony regarding B.L.S.'s statements about her relationship with Murray and Murray's December 2015 visit to Mississippi. Murray asserts that DiMartino's testimony was "very damaging" and that there was no "strategic" reason not to object to it.

¶35. Trial counsel's decision not to object to DiMartino's testimony does not rise to the level of constitutionally ineffective assistance. DiMartino testified that B.L.S. told him she could not recall the exact date of the incident but that she knew it occurred in December 2015 and before her sixteenth birthday. In this respect, DiMartino's hearsay testimony was consistent with Murray's defense. Murray challenged B.L.S.'s credibility based on her inability to recollect the date of the alleged offense and the lack of evidence to corroborate a sexual encounter between B.L.S. and Murray in December 2015. In addition, trial counsel later cross-examined B.L.S. about her prior statements to DiMartino. "We presume that decisions not to object to testimony were strategic if they fairly can be characterized as such." *Shinn v. State*, 174 So. 3d 961, 967 (¶15) (Miss. Ct. App. 2015). In this case, trial counsel's decision not to object to DiMartino's testimony can fairly be characterized as strategic. Therefore, it cannot support an ineffective-assistance claim.

¶36. We also conclude that Murray fails to show that he was prejudiced by the lack of an objection to DiMartino's testimony. B.L.S. testified at trial and was subject to full cross-examination, and there is no "reasonable probability" that the verdict would have been different if counsel had objected to DiMartino's testimony. *Strickland*, 466 U.S. at 694.

19

### C.     Failure to Request Limiting Instruction

¶37.    Next, Murray argues that his trial counsel was ineffective because they failed to request a "correct limiting instruction" regarding E.S.'s hearsay testimony about her neighbor's out-of-court statement.  As discussed above, the trial judge did give the jury a limiting instruction, but on appeal Murray argues that the instruction was "incomplete."  The judge instructed the jurors as follows:

> All right.  Ladies and Gentlemen, sometimes evidence is allowed not for the truth of the matter asserted.  So, for example, if Juror No. 1 told Juror No. 2 something, and Juror No. 2 told Juror No. 3 something, it's not for the truth of what Juror No. 1 said.  It's to explain why Juror No. 2 got up and said something to Juror No. 3.  Does everybody understand that?  I know that's a long way around, but it will be admitted not for the truth of the matter asserted.  You may proceed.

¶38.    In general, "the decision of whether or not to request a limiting instruction falls under the umbrella of trial strategy."  *Herrington v. State*, 102 So. 3d 1241, 1246 (¶18) (Miss. Ct. App. 2012).  Indeed, "[t]he [Mississippi] Supreme Court has recognized on a number of occasions that the defendant may not want such an instruction because it may actually 'focus the jury's attention' on the potentially prejudicial testimony."  *Curry v. State*, 202 So. 3d 294, 299 (¶16) (Miss. Ct. App. 2016) (quoting *Tate v. State*, 912 So.2d 919, 928 (¶28) (Miss. 2005)).  Here, it was reasonable trial strategy for counsel not to request a further limiting instruction.  Moreover, for essentially the same reasons that the admission of the testimony was harmless error (*see supra* Part I), Murray cannot show that he was prejudiced by the lack of an additional limiting instruction.

### D.    Failure to Make a Timely Request for B.L.S.'s Counseling Records

¶39.    Finally, Murray argues that his trial counsel provided ineffective assistance by failing to make a timely and proper request for B.L.S.'s counseling records. *See supra* Part II. By its nature, this particular claim depends on Murray's speculation about evidence that might have been discovered in B.L.S.'s counseling records—evidence that is not part of the record in this appeal. Accordingly, the record on appeal is not sufficient to address this claim. Therefore, we dismiss this claim without prejudice to Murray's right to raise the claim in a properly filed motion for post-conviction relief.[7] *See, e.g.*, *McBeath v. State*, 271 So. 3d 579, 586-87 (¶24) (Miss. Ct. App. 2018) (holding that an ineffective-assistance claim "alleg[ing] that counsel failed to discover evidence that is not in the record" could not be decided on direct appeal); *Johnson v. State*, 191 So. 3d 732, 736 (¶14) (Miss. Ct. App. 2015) (holding that an ineffective-assistance claim that "trial counsel failed to investigate and present available evidence" could not be decided on direct appeal).

### CONCLUSION

¶40.    In summary, we conclude that the admission of E.S.'s hearsay testimony regarding her neighbor's out-of-court statement was harmless error and that the trial judge did not err by denying Murray's ore tenus request to compel the State to disclose the identity of B.L.S.'s counselor. We also conclude that Murray's ineffective-assistance-of-counsel claims are

---

[7] Murray may not file such a motion in the circuit court without permission from the Mississippi Supreme Court. *See* Miss. Code Ann. § 99-39-7 (Rev. 2020).

without merit, with the exception of his claim based on counsel's failure to make a timely or proper request for B.L.S.'s counseling records. That particular ineffective-assistance claim is dismissed without prejudice because the record on appeal is insufficient to address it. Accordingly, Murray's conviction and sentence are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**